UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ADA PERKINS,                                          Case No. 1:13-cv-102
      Plaintiff,                                    Spiegel, J.
                                                     Litkovitz, M.J.

    vs

COMMISSIONER OF                                      **REPORT AND**
SOCIAL SECURITY,                                     **RECOMMENDATION**
      Defendant.


      Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's statement of

errors (Doc. 14), the Commissioner's response in opposition (Doc. 19), and plaintiff's reply

memorandum (Doc. 29, Ex. 1).

**I. Procedural Background**

      Plaintiff filed an application for DIB in November 2004, alleging disability since January

2, 2004, due to fibromyalgia and slipped disc. (Tr. 62). Plaintiff's application was ultimately

denied by Administrative Law Judge (ALJ) Sarah J. Miller, whose decision became the

Commissioner's final decision upon the Appeals Council's denial of review. Plaintiff

subsequently sought judicial review of that decision. District Judge Beckwith, adopting the

Report and Recommendation of the undersigned Magistrate Judge, reversed ALJ Miller's

decision. *See Perkins v. Comm'r of Soc. Sec.*, No. 10-cv-233, 2011 WL 2443950 (S.D. Ohio

June 16, 2011) ("*Perkins I*"). District Judge Beckwith determined that the ALJ's residual

functional capacity (RFC) formulation was not supported by substantial evidence and, further,

that the ALJ erred in weighing the opinion of plaintiff's treating physician. The case was

remanded to the Commissioner for further administrative proceedings consistent with the District Court's opinion. *Id.*

On remand, plaintiff, through counsel, appeared at a second hearing before ALJ Gilbert A. Sheard at which plaintiff testified. On June 27, 2012, ALJ Sheard issued a decision finding that plaintiff was not disabled. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Medical Evidence

Plaintiff frequently reported leg and back pain to treating physician Dr. Todd. *See* Tr. 137, 140, 144-45, 148, 153, 156, 283. However, Dr. Todd's treatment records contain no physical examination findings and primarily consist of medication notations. *See* Tr. 134-57, 253-64, 281-84, 452-57.

A January 2003 Doppler study of plaintiff's lower extremities revealed normal ankle bronchial index (ABI) findings in both legs; moderate distal superficial femoral artery stenosis bilaterally; and mild tibioperoneal stenosis bilaterally. (Tr. 192). A March 2003 MRI of plaintiff's spine revealed mild disc space narrowing, disc desiccation and minimal posterior slippage of L5 on S1 which could result in extrinsic compression on the right and left proximal S1 nerve roots. (Tr. 195). Minimal left posterior lateral annular rent in the disc was also noted with only subtle left posterior lateral disc bulge at that level. (*Id.*).

In May 2003, plaintiff was examined by an orthopedist, David E. Taylor, M.D. Dr. Taylor examined plaintiff and found no pain on palpation of her lower spine; no loss of sensation in her legs; full range of motion in her hips; fairly weak L5 nerve root distribution bilaterally; and equal reflexes in her legs. Dr. Taylor reviewed plaintiff's March MRI showing some mild spondyolisthesis and stated he "would be surprised if this were causing significant bilateral leg

2

pain," as plaintiff's pain appeared to be related to activity. Dr. Taylor could not find an objective basis for plaintiff's leg pain and opined that she may have an electrolyte imbalance or endocrine abnormality. (Tr. 93-94).

Chiropractor Donald D. Fudala, D.C., examined plaintiff in July 2003. (Tr. 196-97). Plaintiff reported back pain and aching pain in her legs, primarily with activity. (Tr. 196). On examination, plaintiff had mild weakness in her ankles but no other muscle weakness was found. (*Id.*). Plaintiff had normal reflexes and sensation in her legs; normal coordination; negative straight leg raise; and was able to balance on either leg. (Tr. 196-97). Plaintiff had mild back pain with flexing. (Tr. 197). Dr. Fudala was uncertain of the etiology of plaintiff's pain and recommended spinal manipulation and epidural injections in the event that manipulation failed, though he noted injections may not be helpful given the unusual symptoms plaintiff reported. (*Id.*).

In October 2004, plaintiff underwent a cardiologic study with cardiologist Mark M. Kirkham, M.D. (Tr. 181-83). Dr. Kirkham noted that plaintiff exhibited a "normal electrocardiographic response to exercise showing very good exercise tolerance." (Tr. 183). An undated Doppler study shows that plaintiff had normal ABI findings in her right leg with mild peripheral artery disease detected in her left leg. (Tr. 270).

The medical opinion evidence consists of four opinions from plaintiff's treating physician, Dr. Todd; the opinion of a non-examining state agency reviewing physician; and the consultative examination report from Dr. Schweitzer.

On January 6, 2005, Dr. Todd reported that plaintiff had chronic and progressive fibromyalgia and lumbar disc disease. (Tr. 189). Dr. Todd further reported that plaintiff was effectively being treated with narcotics and had an adequate response to treatment. (Tr. 190).

3

Dr. Todd opined that plaintiff was "unable to perform any repetitive tasks or any sustained physical activity without exacerbating [her] pain." (*Id.*).  When asked to describe the pertinent clinical examination findings supporting his opinion, Dr. Todd provided: "see enclosed . . . no objective findings of significance." (Tr. 189).

Non-examining state agency physician Cindi Hill, M.D., reviewed the record in February 2005.  Dr. Hill discussed plaintiff's subjective reports of pain and the pertinent objective and clinical findings.  Dr. Hill noted that the rheumatology labs were negative and that plaintiff did not have the required 11 or more of the 18 specific tender points of fibromyalgia to support the diagnosis.  Regarding the MRI evidence, Dr. Hill stated that the findings were normal given plaintiff's age and that the lack of correlating objective findings on exam did not establish that plaintiff had a severe impairment.  Dr. Hill concurred with Dr. Fudala's opinion as plaintiff's pain had no obvious etiology and was likely psychological in nature.  Dr. Hill found that plaintiff's functional allegations "cannot be found to be credible" as the record does not establish that she had a medically determinable impairment.  Dr. Hill also determined that Dr. Todd's January 2005 assessment could not be credited given the lack of any objective findings supporting it. (Tr. 227).

On May 6, 2005, Dr. Todd completed a "Medical Assessment of Ability to Do Work-Related Activities" form.  Dr. Todd reported that plaintiff was diagnosed with peripheral neuropathy, fibromyalgia, and Renaud's phenomenon as demonstrated by her reports of chronic leg and low back pain.  Dr. Todd opined that as a result of these conditions, plaintiff could lift or carry less than five pounds; could stand or walk less than one hour in an eight hour work day; could sit less than one hour in an eight hour workday; and was limited in her ability to push.  Dr. Todd further opined that plaintiff could never climb, balance, stoop, crouch, kneel, or crawl, and

4

should not be exposed to moving machinery, temperature extremes, or vibration. When asked to explain the findings supporting his opinion, Dr. Todd reported: "unable to lift without worsening pain"; "exacerbation of pain with ambulation"; "develop sciatica with > 30 minutes of sitting"; "exacerbation of chronic pain"; and "worsening pain." (Tr. 248-51). On August 6, 2007, Dr. Todd completed another medical assessment form indicating that there were no changes from his May 2005 opinion. (Tr. 285).

Dr. Todd completed a "Physical [RFC] Questionnaire" on January 20, 2012. Dr. Todd reported that plaintiff was diagnosed with fibromyalgia, neuropathy, peripheral and degenerative disc disease of the lumbar spine. Dr. Todd further reported that plaintiff's complaints of pain were being treated with prescriptions that controlled, but did not completely alleviate her symptoms. Dr. Todd opined that plaintiff frequently experienced pain that would interfere with her attention and concentration to perform work tasks and that plaintiff was capable of performing low stress jobs. As to her physical abilities, Dr. Todd opined that plaintiff could walk two blocks without rest or pain; sit and stand for twenty minutes at a time; stand or walk for two hours in an eight hour work day; and sit for at least six hours in an eight hour work day. Dr. Todd further opined that plaintiff could rarely lift less than ten pounds and never lift more than ten pounds; rarely twist; and never stoop, bend, crouch, squat, or climb ladders or stairs. When asked to identify the clinical findings supporting his opinion, Dr. Todd provided: "no gross findings." (Tr. 459-63).

On February 28, 2012, Dr. Schweitzer examined plaintiff for disability purposes. (Tr. 464-75). Plaintiff exhibited 3/5 strength in all extremities, but Dr. Schweitzer noted that she was "not trying very hard to use [her] muscles." (Tr. 466). Plaintiff exhibited normal range of motion in her extremities, hips, hands, and back. (Tr. 467-69). Dr. Schweitzer opined that

plaintiff was capable of frequently lifting and carrying up to ten pounds; sitting, standing, and walking two hours at a time in an eight hour work day; walking one mile at a time on a good day; frequently reaching, handling, pushing and pulling; frequently balancing and climbing stairs, ramps, ladders, and scaffolds; and occasionally stooping, kneeling, crouching, and crawling. (Tr. 470-73). In conclusion, Dr. Schweizer provided the following statement:

> I am unable to document any objective orthopaedic pathology on this patient. She demonstrates no radicular signs, negative straight leg raise test bilaterally and full range of motion on the spine. Her MRI in 2003 showed degenerative changes, not indicative of disability. Although she carries a diagnosis of fibromyalgia, there are no objective tests or physical findings that can document this. I, therefore, am unable to provide any concrete evidence of disability in this patient. Furthermore, when I told her having her MRI scan would be very helpful, she said she had it at home, walked with a normal gait out of the office, drove home, got it and brought it back. She did not seem to have any trouble doing this. She just doesn't seem disabled to me.

(Tr. 465).

## III. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A) (DIB). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

6

> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] last met the insured status requirements of the Social Security Act on March 31, 2008.
>
> 2. [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of January 2, 2004 through her date last insured of March 31, 2008 (20 CFR 404.1571 *et seq.*).

7

3. Through the date last insured, [plaintiff] had the following medically determinable impairments: degenerative disc disease, Raynaud's syndrome, hypertension, neuropathy, allergic rhinitis, and hyperlipidemia (20 CFR 404.1521 *et seq.*).

4. Through the date last insured, [plaintiff] did not have an impairment or combination of impairments that significantly limited the ability to perform work-related activities for 12 consecutive months; therefore, [plaintiff] did not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.*).

5. [Plaintiff] was not under a disability, as defined in the Social Security Act, at any time from January 2, 2004, the alleged onset date, through March 31, 2009, the date last insured (20 CFR 404.1520(c)).

(Tr. 348-53).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

8

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff contends: (1) the ALJ erred in finding that plaintiff had no severe impairments; (2) the ALJ improperly discounted the opinions of her treating physician, Michael Todd, M.D.; and (3) the ALJ erred in discounting plaintiff's credibility. (Doc. 14 at 6-9).

As a threshold matter, the Court must determine whether ALJ Sheard was bound by ALJ Miller's prior Step Two determination that plaintiff suffered from the severe impairments of fibromyalgia and lumbar disc disease. Plaintiff maintains that ALJ Sheard's finding that she had no severe impairments was outside the scope of the *Perkins I* remand order, wherein the Court remanded the matter with instructions to the ALJ to re-evaluate the weight given to Dr. Todd's opinions given his treating physician status. Plaintiff maintains ALJ Sheard overstepped his authority by re-assessing the severity of plaintiff's impairments. In opposition, the Commissioner asserts that in light of the *Perkins I* remand order mandating that the ALJ "determine anew whether plaintiff is under a disability" (Tr. 374), ALJ Sheard properly and necessarily re-assessed plaintiff's disability claim in its entirety.

9

The Sixth Circuit held in *Drummond v. Comm'r of Soc. Sec.*, 136 F.3d 837 (6th Cir. 1997), that principles of *res judicata* apply to certain findings of the Commissioner. "When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances. . . ." *Id.* at 842. *Drummond*, however, does not apply to the instant case. As the Sixth Circuit later stated in *Wireman v. Comm'r of Soc. Sec.*, 60 F. App'x 570 (6th Cir. 2003):

> *Drummond* addressed the question of when a claimant has filed two different applications and the ALJ's decision on the first application has become final. The court held in *Drummond* that absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ. Thus, an ALJ addressing a claimant's subsequent application is bound by the findings of a prior final decision.

*Id.* at 571.

Here, however, ALJ Sheard was not required to give *res judicata* effect to ALJ Miller's decision under *Drummond* as it was not a final decision given the Appeals Council's remand order vacating the earlier decision. *See* Tr. 375-77. *See also Duda v. Sec'y of H.H.S.*, 834 F.2d 554, 555 (6th Cir. 1987) (remand orders are not final decisions). ALJ Sheard's "findings did not involve a different application nor a 'final' decision. The only final decision in this case is [ALJ Sheard's June 27, 2012] hearing decision which is now before this [C]ourt. All other decisions relevant to [plaintiff]'s social security disability benefits never became final as they were vacated pursuant to remands for further proceedings." *Wireman*, 60 F. App'x at 571. *See also Williams v. Comm'r of Soc. Sec.*, 2:12-cv-430, 2014 WL 63919, at *25 (E.D. Tenn. Jan. 8, 2014) (citing *Wireman* in support of finding that *res judicata* does not apply where the Appeals Council vacates and remands the prior ALJ decision); *Williams v. Astrue,* No. 3:10-cv-2354, 2012 WL 892544, at *6 (S.D. Ohio Mar. 14, 2012) (holding that *Drummond* did not apply as it

10

is "axiomatic that a decision vacated by the Appeals Council has no *res judicata* effect");

*Anderson v. Astrue,* No. 2:07-cv-140, 2009 WL 32935, at *3-4 (E.D. Tenn. Jan. 6, 2009)

(holding that the present ALJ was not bound by earlier findings vacated by the Appeals

Council). Moreover, the Court's remand order permitted the ALJ on remand to "determine

anew whether plaintiff is under a disability within the meaning of the Social Security Act." (Tr.

371). Given this mandate, it was appropriate for ALJ Sheard to re-evaluate plaintiff's disability

application in its entirety. ALJ Sheard was not bound by ALJ Miller's prior decision, including

her Step Two determination that plaintiff had the severe impairments of fibromyalgia and

lumbar disc disease. The Court now turns to the substance of plaintiff's assignments of error.

     *a. Whether the ALJ's finding that fibromyalgia was not a medically determinable impairment prior to the date last insured is supported by substantial evidence.*

     Under the Social Security regulations, an "impairment must result from anatomical,

physiological, or psychological abnormalities which can be shown by medically acceptable

clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. "A physical or mental

impairment must be established by medical evidence consisting of signs, symptoms, and

laboratory findings, not only by [the claimant's] statement of symptoms." *Id.*

     A severe impairment or combination of impairments is one which significantly limits the

physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). In the

physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit,

lift, push, pull, reach, carry or handle. 20 C.F.R. § 404.1521(b)(1). Basic work activities relate

to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform

physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond

to supervisors, and deal with changes in the work setting. 20 C.F.R. § 404.1521(b). Plaintiff is

11

not required to establish total disability at this level of the sequential evaluation. Rather, the

severe impairment requirement is a threshold element which plaintiff must prove in order to

establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357

(6th Cir. 1984). An impairment will be considered nonsevere only if it is a "slight abnormality

which has such minimal effect on the individual that it would not be expected to interfere with

the individual's ability to work, irrespective of age, education, and work experience." *Farris v.*

*Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler,* 724 F.2d 914, 920

(11th Cir. 1984)). The severity requirement is a "*de minimus* hurdle" in the sequential evaluation

process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers*, 486 F.3d at 243

n.2.

The ALJ determined that plaintiff did not have a severe impairment or combination of

impairments based on his consideration of plaintiff's subjective allegations, the objective and

opinion medical evidence, including the opinions of treating physician Dr. Todd, and other

evidence of record. (Tr. 348-52). The ALJ rejected Dr. Todd's diagnosis of fibromyalgia

because it did not comply with The American College of Rheumatology (ACR) criteria for the

Classification of Fibromyalgia. (Tr. 352). The ALJ noted that the ACR criteria for classifying

a condition as fibromyalgia requires "both widespread pain and also pain in 11 of 18 tender

points." (*Id.*). The ALJ found that Dr. Todd's general statements did not comport with these

criteria and the fibromyalgia diagnosis was unfounded. (*Id.*). The ALJ noted that Dr. Todd's

records and opinions failed to put forth any other objective or clinical test findings in support of

his fibromyalgia diagnosis and that Dr. Todd "also failed to rule out more common ailments that

produce similar symptoms. . . ." (*Id.*, citing *Criteria for the Classification of Fibromyalgia*,

Primer on Rheumatic Diseases 457, adapted from F. Wolfe, HA Smythe, MB Yunus *et al.*,

12

American College of Rheumatology (1990)).[1] Therefore, the ALJ determined that the record did not support a finding that fibromyalgia was even a medically determinable impairment, let alone a severe impairment, prior to the date last insured. (*Id.*).

Plaintiff contends the ALJ erred in determining that her fibromyalgia was not a severe impairment.[2] Plaintiff asserts the ALJ's reasoning is inconsistent insofar as he stated that Dr. Todd was a qualified medical professional but he failed to validate Dr. Todd's fibromyalgia diagnosis. Plaintiff further asserts the ALJ should have found her fibromyalgia to be a severe impairment because Dr. Todd's records document plaintiff's pain levels; her need for narcotic pain medication; and her referral to two specialists. Plaintiff also cites to the February 2012 report from consultative examining physician Edmund H. Schweitzer, M.D., who noted there are no objective tests or physical findings that can document fibromyalgia. (Doc. 14 at 7, citing Tr. 464-65).

The objective, clinical, and opinion evidence of record substantially support the ALJ's determination that plaintiff does not have the medically determinable impairment of fibromyalgia. Fibromyalgia is a condition which "causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances." *Preston v. Sec'y of H.H.S.*, 854 F.2d 815, 817 (6th Cir. 1988). "[U]nlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 243. Despite fibromyalgia's elusive nature, there is a recognized process for diagnosing it which

---

[1]*See also The American College of Rheumatology Preliminary Diagnostic Criteria for Fibromyalgia and Measurement of Symptom Severity*, Vol. 62, No. 5 Arthritis Care & Research 600 (2010) (reaffirming the use of the diagnostic criteria enunciated in 1990 but also establishing a symptom severity scale for diagnosing fibromyalgia).

[2]While plaintiff references her diagnosis of Reynaud's phenomenon in this portion of her statement of errors (Doc. 14 at 6), she does not put forth any argument with respect to this impairment. Plaintiff's failure to present a developed argument that this condition is a severe impairment amounts to a waiver. *See McClellan v. Astrue*, 804 F. Supp.2d 678, 688 (E.D. Tenn. 2011) (and cases cited therein) (arguments in social security appeal not raised or supported in more than a perfunctory manner may be deemed waived). Thus, the Court's review is limited to whether the ALJ's determination that plaintiff's fibromyalgia and neuropathy are not severe impairments is supported by substantial evidence.

13

"includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." *Id*. at 244. *See also Preston*, 854 F.2d at 818.

As stated above, the ALJ rejected Dr. Todd's diagnosis of fibromyalgia because: (1) it did not comply with the ACR criteria for classifying fibromyalgia as there were no findings of 11 of 18 tender points; and (2) the evidence of record did not establish that Dr. Todd ruled out other disorders. (Tr. 352). Notably, plaintiff does not address the merits of the ALJ's assessment of Dr. Todd's opinions but simply maintains that he was not permitted to engage in the analysis in the first instance. As stated above, ALJ Sheard was permitted to assess anew plaintiff's disability application. But more importantly, the ALJ's analysis of Dr. Todd's opinions is supported by substantial evidence.

Dr. Todd's fibromyalgia diagnoses appear to exist in a vacuum. There is no evidence that he engaged in any testing whatsoever in formulating his diagnosis, let alone testing specific focal points for tenderness. Nor does it appear that Dr. Todd attempted to rule out other conditions through other objective or clinical testing. Rather, Dr. Todd seems to have labeled plaintiff's subjective allegations of pain as "fibromyalgia" for lack of a better term. Plaintiff's subjective reports alone are insufficient to support this diagnosis. *See Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 526 (6th Cir. 2003) (quoting Soc. Sec. Ruling 99-2p) (holding that fibromyalgia is medically determinable condition that may be established by the existence of, *inter alia*, focal trigger points). *See also* Soc. Sec. Ruling 12-2p (fibromyalgia will only be recognized as a medically determinable impairment where a claimant provides evidence from an acceptable medical source which includes: (1) a history of widespread pain; finding of 11 of 18 tender points on examination; and evidence that other disorders have been excluded or (2) a

14

history of widespread pain; repeated manifestations of six or more fibromyalgia symptoms; and evidence of exclusion of other disorders. The impairment cannot be established on the diagnosis alone).

As noted by the ALJ and the non-examining state agency physician, there are no examination findings of trigger point tenderness or any other examination findings from Dr. Todd or any other medical source that support the fibromyalgia diagnosis. (Tr. 227, 352). Absent such evidence, plaintiff's allegations of pain and her prescriptions for pain medication are not enough to establish that plaintiff suffers from fibromyalgia, severe or otherwise. *See* 20 C.F.R. § 404.1529(b) ("[S]ymptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect [a claimant's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."). *See also Cornett v. Comm'r of Soc. Sec.*, No. 2:11-cv-709, 2012 WL 3112370, at *11 (S.D. Ohio July 31, 2012) (Report and Recommendation), *adopted*, 2012 WL 3887175 (S.D. Ohio Sept. 7, 2012) (determination that plaintiff's fibromyalgia was not severe is substantially supported where there was little evidence aside from subjective complaints that the condition was functionally limiting); *Jordan v. Comm'r of Soc. Sec.*, No. 10-11833, 2011 WL 891198, at *3-4 (E.D. Mich. Jan. 14, 2011) (Report and Recommendation), *adopted*, 2011 WL 891240 (E.D. Mich. Mar. 11, 2011) (upholding ALJ's determination that fibromyalgia was not a severe impairment where there were no findings of focal trigger points); *Cherry v. Astrue*, No. 3:07-cv-79, 2009 WL 1766547, at *6 (M.D. Tenn. June 18, 2009) (ALJ properly determined fibromyalgia was not a severe impairment where diagnosis was largely based on plaintiff's subjective complaints). *See also* 20 C.F.R. § 404.1508 (impairment must be established by medical evidence consisting of signs, symptoms and laboratory findings, and not solely by

15

claimant's statement of symptoms); § 404.1528(a) (claimant's own description of impairment is not enough to establish existence of that impairment). The absence of any evidence supporting Dr. Todd's diagnosis of fibromyalgia, aside from plaintiff's subjective reports, substantially supports the ALJ's determination that plaintiff does not have the medically determinable impairment of fibromyalgia.[3]

   *b. Whether the ALJ's finding that plaintiff's peripheral neuropathy was not a severe impairment prior to the date last insured is supported by substantial evidence.*

   The ALJ also determined that plaintiff's peripheral neuropathy did not constitute a severe impairment as the record contains "virtually no objective evidence to establish the presence of [this condition] that produced definite and measurable work limitations on or prior to the date last insured. . . ." (Tr 352). The ALJ noted that the objective evidence reflected mild findings "or none at all" and did not establish that plaintiff's neuropathy caused significant limitations such that it could be classified as a severe impairment. (*Id.*).

   Plaintiff contends the ALJ erred in determining that her peripheral neuropathy was not a severe impairment, citing to her reports of leg pain and weakness and imbalance; MRI findings of disc disease and spondylolisthesis with nerve compression; and findings of muscle weakness on exam. (Doc. 14 at 7, citing Tr. 93 131, 133, 139-41, 145-46, 148, 152, 194-95, 197). Plaintiff contends that these objective findings demonstrate that the ALJ's severity determination is not supported by substantial evidence.

   The ALJ's finding that plaintiff's neuropathy was not a severe impairment is substantially supported as the objective and clinical findings simply do not establish that this condition had

---

[3]Regardless of plaintiff's perception that the ALJ's rejection of Dr. Todd's fibromyalgia diagnosis is inconsistent with his recognition of the doctor's qualifications as a medical professional (Doc. 14 at 7), the lack of any evidence supporting Dr. Todd's diagnosis substantially supports the ALJ's determination.

16

more than a minimal effect on plaintiff's ability to work. Plaintiff's complete argument as to her neuropathy is as follows:

> [T]here is ample objective evidence in the record to support not only the diagnosis of neuropathy or nerve damage in [p]laintiff's legs, but also its severity. Plaintiff consistently reported leg pain, leg weakness and imbalance to her doctors (Tr. 131, 133, 139-41, 145-46, 148, 152). Doppler studies in 2003 showed moderate stenosis in the arteries of her legs (Tr. 192). A lumbar MRI showed disc disease and spondylolisthesis with nerve compression (Tr. 194-195). Dr. Fudala found muscle weakness on exam and recommended that [p]laintiff be treated for bilateral S1 nerve root irritations due to facet arthropathy (Tr. 197). Dr. Taylor observed on exam that [p]laintiff had weakness along distribution of the L5 nerve roots (Tr. 93).

(Doc. 14 at 7-8).

The ALJ determined that plaintiff did not have the severe impairment of peripheral neuropathy because there was "virtually no objective evidence" establishing its presence. The ALJ found that the objective evidence cited by plaintiff did not support classifying the impairment as severe because, at most, it showed that she had mild neuropathy. The ALJ also noted that Dr. Hill found no evidence of any medically determinable impairment in her review of the evidence. (Tr. 352). The ALJ's finding in this regard is substantially supported.

The evidence cited by plaintiff fails to demonstrate that she had severe peripheral neuropathy. Plaintiff cannot establish the severity of an impairment by reference to her subjective reports of pain. *See Young v. Sec'y of H.H.S.*, 925 F.2d 146, 150-51 (6th Cir. 1990) (the severity of an impairment must be established by objective or "the condition must be of a severity which can reasonably be expected to give rise to the alleged disabling pain."). The condition of peripheral neuropathy involves damage to the peripheral nervous system, which may affect sensation, organ function, movement, and other aspects of health depending on the

nerves affected.  *See* http://www.ninds.nih.gov/disorders /peripheralneuropathy/detail_periph

eralneuropathy.htm (last visited February 12, 2014).  Peripheral neuropathy is diagnosed by

employing a variety of testing, including examinations for loss of sensation and muscle

weakness, blood testing, MRI testing, and nerve conduction studies.  *Id.*

As determined by the ALJ, the objective findings here do not establish that plaintiff has

more than mild neuropathy.   The condition itself does not appear to have caused any significant

limitations on plaintiff's ability to function.  *See* Tr. 192 (the January 2003 Doppler study

showed mild to moderate artery stenosis in plaintiff's legs); Tr. 195 (the March 2003 MRI

showed only minimal and mild findings); Tr. 93-94 (examining orthopaedist Dr. Taylor found no

pain on palpation, no loss of sensation, good reflexes, with the only notable weakness found at

L5 bilaterally); Tr. 196-97 (Dr. Fudala's examination revealed mild ankle weakness only, normal

reflexes and sensation in the legs, normal coordination, good balance, and negative straight leg

raise).  While plaintiff cites to this evidence to support her assertion that her neuropathy is

severe, it merely establishes the existence of the condition.  As there are recognized tests capable

of measuring the severity of neuropathy, the ALJ reasonably determined plaintiff's impairment

was not severe in the absence of clinical or objective findings supporting her subjective

allegations.

Moreover, there is no evidence in the record demonstrating that plaintiff's neuropathy

functionally limited her ability to do work[4]; the existence of the impairment, standing alone, is

insufficient to establish that it was severe.  *See Higgs*, 880 F.2d at 863. ("the mere diagnosis of

[an impairment], of course, says nothing about the severity of the condition.").  The ALJ

considered the objective evidence noted above and reasonably determined that it did not justify a

---

[4]As discussed further *infra*, the ALJ reasonably determined to reject Dr. Todd's opinions that plaintiff has significant functional limitations due to her impairments.

determination that plaintiff had severe peripheral neuropathy. The ALJ's finding is further

supported by the 2012 examination findings of Dr. Schweitzer. Though plaintiff exhibited

reduced strength on exam, Dr. Schweitzer noted that she did not appear to be giving full effort.

(Tr. 466). Moreover, Dr. Schweitzer could find no objective orthopaedic pathology or any

concrete evidence of disability. (Tr. 465). As the objective and clinical evidence of record does

not establish that plaintiff's peripheral neuropathy was more than mild or caused her any

functional limitations, the ALJ's finding that it was not a severe impairment is substantially

supported.

   *c. Whether the ALJ's analysis of Dr. Todd's opinions is supported by substantial evidence.*

   It is well-established that the findings and opinions of treating physicians are entitled to

substantial weight. "In general, the opinions of treating physicians are accorded greater weight

than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec'y*,

127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.

1985) ("The medical opinions and diagnoses of treating physicians are generally accorded

substantial deference, and if the opinions are uncontradicted, complete deference."). "The

treating physician doctrine is based on the assumption that a medical professional who has dealt

with a claimant and his maladies over a long period of time will have a deeper insight into the

medical condition of the claimant than will a person who has examined a claimant but once, or

who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th

Cir. 1994).

   However, treating-source opinions are only entitled to controlling weight where "(1) the

opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic

techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec'y*, 710 F.3d 365, 376 (6th Cir. 2013) (citing former 20 C.F.R. § 404.1527(d)(2)[5]). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. The ALJ must give "good reasons" for not according controlling weight to a treating physician's opinion. *Wilson*, 378 F.3d at 544. The ALJ must likewise apply the factors set forth in § 404.1527(c)(3)-(6) when considering the weight to give a medical opinion rendered by a non-treating source. 20 C.F.R. § 404.1527(c). When considering the medical specialty of a source, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5).

Here, the ALJ's decision to reject Dr. Todd's diagnosis of fibromyalgia and discount his 2005 and 2007 opinions is supported by substantial evidence. The ALJ determined that Dr. Todd's limitations were not reliable as they were not supported by the objective evidence of record demonstrating that plaintiff's impairments were mild. The ALJ noted that his finding was

---

[5]Title 20 C.F.R. § 404.1527 was amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion that were previously found at § 404.1527(d) are now found at § 404.1527(c).

supported by Dr. Hill's 2005 review of the record and her opinion that Dr. Todd's January 2005

opinion should be given no weight as it is not supported by the objective findings. (Tr. 351-52,

citing Tr. 227).

Dr. Todd has served as plaintiff's primary care physician since 1995. *See* Tr. 189. As

stated above, the treatment notes from Dr. Todd include no examination findings and only

occasional references to plaintiff's subjective reports. For the most part, Dr. Todd's notes are

merely a catalog of plaintiff's medication treatment. *See* Tr. 134-57, 253-64, 281-84, 452-57.

Dr. Todd's January 2005 opinion is equally Spartan inasmuch as it is limited to his finding that

plaintiff is "unable to perform any repetitive tasks or any sustained physical activity without

exacerbating [her] pain." (Tr. 190). Dr. Todd's May 2005 assessment provides a far more

thorough opinion regarding plaintiff's functional abilities, including finding that she has

significant lifting, standing, and sitting limitations. *See* Tr. 248-51. In 2007, Dr. Todd

reaffirmed the May 2005 opinion. *See* Tr. 285.

Plaintiff contends that Dr. Todd's 2005 and 2007 opinions are supported by and

consistent with: objective evidence of disc disease, arthritis, and spondylolisthesis; testing

showing vascular disease in her legs; findings of leg weakness on exam; and range of motion

deficits in her spine. (Doc. 14 at 8, citing Tr. 192, 194-95, 196-97). Contrary to plaintiff's

assertion, the objective evidence in the record does not support Dr. Todd's prescribed limitations

as it generally reflects that plaintiff's conditions are generally mild, with the exception of

moderate tibioperoneal stenosis bilaterally.[6] *See* Tr. 192, 195. Further, the examination findings

from Dr. Taylor and Dr. Fudala were largely normal and both doctors reported that they could

---

[6]The Court notes that while the objective test found "moderate tibioperoneal stenosis" (Tr. 192), there is no evidence establishing that this condition has more than a minimal effect on plaintiff's ability to work. *See Farris*, 773 F.2d at 90.

not find an objective basis for plaintiff's pain. *See* Tr. 93-94, 196-97. The Court further notes that Dr. Todd's opinions lack support not merely because he failed to cite to any clinical or objective evidence supporting his conclusions, but because he conceded that there was no such evidence. *See* Tr. 189 ("no objective findings of significance"). *See also* Tr. 459 ("no gross findings").

The supportability of a treating physician's opinion is one of the factors an ALJ should consider in determining how much weight to afford it. *See* 20 C.F.R. § 404.1527(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at 544. As Dr. Todd did not provide any explanation or cite to any objective or clinical evidence supporting his opinions, the ALJ's determination to discount them is substantially supported. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.") (internal citations and quotations omitted). Further, the inconsistency between Dr. Todd's opinions that plaintiff has extreme functional limitations and the mild findings in the objective evidence serves as a reasonable basis for the ALJ to discount his opinions. *See Kinsella*, 708 F.2d at 1059. *See also* 20 C.F.R. § 404.1527(c)(4) (whether a treating physician's opinion is consistent with other record evidence is a factor to consider in weighing the opinion). Even if substantial evidence would support the opposite conclusion, the Court must uphold the ALJ's severity determination as it is supported by substantial evidence.[7] *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.

_____

[7]The undersigned further notes that the ALJ engaged in a detailed discussion of Dr. Todd's opinion as required by the prior remand order from *Perkins I*. The ALJ thoroughly discussed Dr. Todd's specialization area and his treatment relationship with plaintiff. *See* Tr. 352-53. This is not a case where the ALJ improperly looked for reasons to discount a well-supported treating physician's opinion. As noted by the ALJ, the objective evidence in the record was simply not strong enough to support Dr. Todd's opinions. *See* Tr. 352. Given the ALJ's in-depth analysis of Dr. Todd's opinions and his consideration and discussion of the relevant factors under § 404.1527(c), the Court finds no error in the ALJ's decision to discount the opinions of plaintiff's treating physician.

1986) (findings of the Commissioner that are supported by substantial evidence are conclusive).

Here, the ALJ's decision to not credit Dr. Todd's diagnoses and opinions in determining at Step

Two of the sequential analysis that plaintiff did not have severe neuropathy or the medically

determinable impairment of fibromyalgia is supported by substantial evidence and should be

affirmed.

> *d. Whether the ALJ's credibility finding is supported by substantial evidence.*

To the extent the ALJ's Step Two determination is reliant on his determination that

plaintiff's subjective allegations are not fully credible, this finding is also supported by

substantial evidence. It is the province of the ALJ, and not the reviewing court, to evaluate the

credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations

omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the

Commissioner's credibility finding is entitled to deference and should not be discarded lightly.

*Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538. "If an ALJ rejects a

claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v.*

*Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or

rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful

appellate review." *Hurst v. Sec'y of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski*

*v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible

or intuitive notion about an individual's credibility." *Rogers,* 486 F.3d at 247. Rather, such

determination must find support in the record. *Id.* Whenever a claimant's complaints regarding

symptoms or their intensity and persistence are not supported by objective medical evidence, the

ALJ must make a determination of the credibility of the claimant in connection with his or her

complaints "based on a consideration of the entire case record." *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

Plaintiff argues that the ALJ erroneously discounted her credibility on the basis of the purported inconsistency between her reports of needing to elevate her legs and Dr. Todd's 2012 opinion wherein he opined that plaintiff should not elevate her legs with prolonged sitting. Plaintiff contends that the ALJ's finding in this regard is "illogical" as she never stated that Dr. Todd told her to elevate her legs. Plaintiff further contends the ALJ misstated Dr. Todd's opinion as he "did not opine that [she] should not elevate her legs he merely opined that it was not necessary." (Doc. 14 at 9). Plaintiff's arguments are unavailing.

The undersigned is not persuaded by plaintiff's argument that the ALJ's finding – that her practice of elevating her legs is inconsistent with Dr. Todd's 2012 opinion – is "illogical." When testifying about her leg pain, plaintiff stated that she has to elevate her legs. *See* Tr. 302. The ALJ determined that this practice was inconsistent with Dr. Todd's 2012 opinion wherein he opined that plaintiff's "legs should not be elevated with prolonged sitting." (Tr. 350, citing Tr. 462). The form completed by Dr. Todd asked "With prolonged sitting, should your patient's leg(s) be elevated?"; Dr. Todd checked "No" in response. (Tr. 462). Plaintiff's attempt at a semantic argument – that Dr. Todd merely found that it was not *necessary* for plaintiff to elevate her legs – is contradicted by the plain language of Dr. Todd's assessment form. The only *logical* reading of form is that Dr. Todd was of the opinion that plaintiff *should not* elevate her legs with prolonged sitting. Consequently, the ALJ did not err by finding plaintiff less than fully credible in light of the inconsistency of her practice of elevating her legs and Dr. Todd's opinion.

24

In any event, the ALJ's finding that plaintiff's subjective statements are not fully credible is otherwise supported by substantial evidence. The ALJ noted that plaintiff's testimony at the ALJ hearing that her condition now is "a little worse" than when she testified at the prior 2007 ALJ hearing was contradicted by Dr. Todd's 2012 opinion that plaintiff had greater functional capacities than she did in 2007. (Tr. 350, citing Tr. 458-63, 494). The ALJ also relied on the opinion of Dr. Hill who determined that plaintiff's subjective allegations were not credible given the lack of objective findings. *See* Tr. 227. Moreover, the record reflects that plaintiff previously photocopied prescriptions from Dr. Todd for narcotics. Plaintiff's apparent attempt to pass forged prescriptions supports a finding that she is not wholly credible. *See* Tr. 255 (in October 2005, the pharmacy contacted Dr. Todd's office with concern that plaintiff had presented a photocopied prescription for Oxycontin; Dr. Todd confirmed that the script was a copy).[8]

In sum, the ALJ's Step Two determination should be affirmed as substantial evidence supports his findings that plaintiff does not have the medically determinable impairment of fibromyalgia or severe neuropathy. The ALJ reasonably determined that the fibromyalgia diagnosis and prescribed limitations set forth by plaintiff's treating physician were not supported and were inconsistent with significant objective and clinical evidence. Moreover, the ALJ's decision to not credit plaintiff's subjective statements is substantially supported as stated above.

---

[8]Insofar as plaintiff argues that the ALJ erred by adopting the former credibility finding of ALJ Miller because the District Court in *Perkins I* found that ALJ Miller's credibility finding was erroneous (Doc. 14 at 8-9, citing Tr. 365), plaintiff's argument is not well-taken. Plaintiff did not challenge ALJ Miller's credibility determination in *Perkins I* and the Court made no ruling thereon. *See* Tr. 356-71 (the Court in *Perkins I* merely held that ALJ Miller failed to support her RFC finding with citations to plaintiff's purportedly not credible statements). Consequently, ALJ Sheard permissibly incorporated ALJ Miller's credibility findings from *Perkins I*.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: _2/18/2014_

_Karen L. Litkovitz_
Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ADA PERKINS,                              Case No. 1:13-cv-102
      Plaintiff,                       Spiegel, J.
                                    Litkovitz, M.J.

      vs

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).