```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

ADA PERKINS,                       :   No. 1:13-cv-00102
                                   :
    Plaintiff,                     :
                                   :
    v.                             :   **OPINION AND ORDER**
                                   :
COMMISSIONER OF SOCIAL             :
SECURITY,                          :
                                   :
    Defendant.                     :
                                   :
                                   :

    This matter is before the Court on the February 18, 2014 Report and Recommendation of Magistrate Judge Karen L. Litkovitz (doc. 30), to which Plaintiff has objected (doc. 33) and Defendant has replied (doc. 34). For the reasons indicated herein, we accept the recommendation of the Magistrate Judge.

**I.    Background**

    Plaintiff Ada Perkins filed an application for disability insurance benefits ("DIB") in November 2004, alleging disability since January 2, 2004. Her application was denied initially and upon reconsideration. Plaintiff requested and was granted a <u>de novo</u> hearing before Administrative Law Judge ("ALJ") Sarah J. Miller on November 7, 2007. On January 18, 2008, the ALJ issued her decision. She found that Plaintiff had the severe impairments of fibromyalgia and lumbar disc disease and a

residual functional capacity ("RFC") to perform a limited range of light work, specifically to lift and carry 10 pounds frequently and 20 pounds occasionally; and to sit and stand/walk six-to-eight hours in an eight-hour workday, provided she alternate between sitting and standing for a few minutes every two hours.  She further determined that Plaintiff was able to perform her past relevant work as a secretary, bartender, housekeeping supervisor, outside deliverer and transportation manager as customarily performed in the economy.  On this basis, then, ALJ Miller denied Plaintiff's DIB application.  (Tr. 16-22.)  Plaintiff's request for review by the Appeals Council was denied (Tr. 5-7), and in April 2010, she sought judicial review of the ALJ's decision (see Perkins v. Comm'r of Soc. Sec., No. 1:10-cv-00233 (S.D. Ohio 2010) ("Perkins I") (doc. 1)).

In a Report and Recommendation filed May 23, 2011, Magistrate Judge Litkovitz concluded that the ALJ's findings were not supported by substantial evidence (Perkins I (doc. 13)).  While it was clear that the ALJ gave "little weight" to the functional capacity assessment of Plaintiff's treating physician Michael Todd, M.D., the record was devoid of any other physician opinions regarding Plaintiff's functional capacity or limitations.  Thus, the Magistrate Judge reported that the ALJ's RFC determination was not supported by substantial evidence.  (Perkins I (doc. 13 at 9-11).)  Further, while the ALJ gave two

2

reasons for assigning "little weight" to Dr. Todd's RFC opinion—the lack of "objective medical findings" to support it and his apparent reliance on Plaintiff's subjective complaints—at no point in her decision did she reference any particular medical findings upon which she relied in arriving at her decision. Moreover, she failed to consider the factors listed in 20 C.F.R. § 404.1527(d)(2) in determining the amount of weight to give to the opinions of Dr. Todd. Thus, the Magistrate Judge reported that the ALJ's rejection of the treating physician's assessment of Plaintiff's functional capacity also was not supported by substantial evidence. (Perkins I (doc. 13 at 11-16).) She recommended remand (Perkins I (doc. 13 at 16)). No objections to the Report and Recommendation were filed, and, upon review, the Honorable Sandra S. Beckwith, United States Senior District Judge, adopted it and reversed and remanded the matter under Sentence Four of 42 U.S.C. § 405(g) with the instruction that the ALJ and the Commissioner were "to re-evaluate the treating physician's opinions under the legal criteria set forth in the Regulations, Rulings, and as required by case law, and to determine anew whether [P]laintiff is under a disability within the meaning of the Social Security Act[]" (see Perkins I (doc. 14) (emphasis added)).

Upon remand, a second administrative hearing occurred on May 16, 2012 before ALJ Gilbert A. Sheard, at which Plaintiff

testified.  On June 27, 2012, ALJ Sheard issued an unfavorable decision to Plaintiff, again denying her benefits.  (Tr. 346-54.)  As before, the Appeals Council did not exercise its right to review the decision of the ALJ.  (Tr. 330-33.)  Plaintiff thereafter sought review by this Court.

## II. The Magistrate Judge's Report and Recommendation

On appeal Plaintiff raises three assignments of error.  She argues that the ALJ erred when he:  (1) found that Plaintiff had no severe impairments; (2) failed to give proper weight to the opinions of her treating physician Dr. Todd; and (3) discounted Plaintiff's credibility.  As a threshold procedural matter, the Magistrate Judge concluded that ALJ Sheard was not bound by ALJ Miller's Step Two determination that Plaintiff suffered from the severe impairments of fibromyalgia and lumbar disc disease.  The Sixth Circuit has held that the principles of res judicata apply when the Commissioner has made a "final" decision concerning a claimant's entitlement to benefits.  Drummond v. Comm'r of Soc. Sec., 126 F.3d 837, 842 (6th Cir. 1997).  Remand orders by the Appeals Council, however, are not final decisions.  See Duda v. Sec'y of Health & Human Servs., 834 F.2d 554, 555 (6th Cir. 1987).  Upon remand from the district court in Perkins I, it is quite clear that the Appeals Council vacated the final decision of the Commissioner (and thus ALJ Miller) and concomitantly remanded the claim "to an Administrative Law Judge for further

4

proceedings consistent with the order of the court" (see Tr. 377). On this basis, then, the Magistrate Judge resolved that ALJ Sheard was not required to give res judicata effect to any of ALJ Miller's findings, including those at Step Two. See Williams v. Comm'r of Soc. Sec., No. 2:12-cv-430, 2014 WL 63919, at *25 (E.D. Tenn. Jan. 8, 2014); Williams v. Astrue, No. 3:10CV2354, 2012 WL 892544, at *6 (S.D. Ohio Mar. 14, 2012) (Drummond inapposite as it is "axiomatic that a decision vacated by the Appeals Council has no res judicata effect[]"). And in further support of her conclusion, the Magistrate Judge noted that the remand order from the district court in Perkins I instructed the ALJ to determine "anew" whether Plaintiff was disabled (see Perkins I (doc. 14)). (Perkins II (doc. 30 at 9-11).)

The Magistrate Judge was not persuaded by the substance of Plaintiff's assignments of error either. She considered first the ALJ's Step Two finding that Plaintiff does not have a severe medically determinable impairment, or combination of impairments, as required under 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c) (Tr. 348). The Magistrate Judge concluded that the ALJ's rejection of treating physician Dr. Todd's diagnosis of fibromyalgia was supported by substantial evidence. Indeed, she described his diagnosis as "existing in a vacuum" (Perkins II (doc. 30 at 14)). There was no evidence that he engaged in any

5

testing at all in settling on a diagnosis, much less the traditional testing of the specific 18 focal points for tenderness as prescribed by The American College of Rheumatology (ACR) "Criteria for the Classification of Fibromyalgia." Nor was there evidence that Dr. Todd attempted to rule out other conditions that produce similar symptoms. See Soc. Sec. Ruling 12-2p, 2012 WL 3104869, at *2-3 (July 25, 2012); see also Bartyzel v. Comm'r of Soc. Sec., 74 F. App'x 515, 526 (6th Cir. 2003) ("[T]he Secretary has noted that . . . fibromyalgia [is] medically determinable and that the existence of certain symptoms, including the presence of focal trigger points, may be sufficient to establish the diagnosis." (citing Soc. Sec. Ruling 99-2p)). In the Magistrate Judge's view, Dr. Todd attributed his patient's subjective allegations of pain to "fibromyalgia" for lack of any "better" term. (Perkins II (doc. 30 at 14).) Without more, however, a claimant's subjective reports will not suffice to support a diagnosis of fibromyalgia or a finding that it necessarily constitutes a severe impairment. See, e.g., Cornett v. Comm'r of Soc. Sec., No. 2-11-cv-00709, 2012 WL 3112370, at *11 (S.D. Ohio July 31, 2012) (Report and Recommendation), adopted, 2012 WL 3887175 (S.D. Ohio Sept. 7, 2012); Cherry v. Astrue, No. 3:07-cv-0079, 2009 WL 1766547, at *6 (M.D. Tenn. June 18, 2009) (memorandum opinion); see also 20 C.F.R. § 404.1508 ("A physical . . . impairment must be

6

established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms (citation omitted)." (emphasis added)); 20 C.F.R. § 404.1528(a) ("Symptoms are your own description of your physical . . . impairment. Your statements alone are not enough to establish that there is a physical . . . impairment." (emphasis added)). That the ALJ found Dr. Todd to be a "respected" and "qualified" medical professional (Perkins II (doc. 30 at 16 n.3 (quoting doc. 14 at 7); Tr. 352) cannot overcome the complete lack of any evidence to support his diagnosis. Accordingly, the Magistrate Judge concluded that substantial evidence supported the ALJ's finding that Plaintiff does not have the medically determinable impairment of fibromyalgia.

The Magistrate Judge likewise concluded that substantial evidence supported the ALJ's finding that Plaintiff's medically determinable impairment of peripheral neuropathy is, at best, mild and, most certainly, not severe. (Perkins II (doc. 30 at 16-19).) She observed that, by itself, the existence of an impairment is insufficient to establish that it is likewise severe. Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988). Plaintiff also cannot establish the severity of her impairment by reference only to her subjective reports of pain. See Young v. Sec'y of Health & Human Servs., 925 F.2d 146, 150-51 (6th Cir. 1990). Unlike fibromyalgia, peripheral neuropathy is diagnosed,

7

and its severity can be measured, by objective medical testing. The Magistrate Judge describes the evidence to which Plaintiff cites as merely <u>confirming the diagnosis</u> rather than corroborating any significant limitations on her ability to function. For example, the January 2003 Doppler study showed mild-to-moderate artery stenosis in her legs, with clinical correlation required (Tr. 192); the March 2003 MRI of her lumbar spine showed only minimal-to-mild findings (Tr. 194-95); a May 2003 examination by orthopedist David E. Taylor, M.D. revealed no pain on palpation of her lower lumbar spine, no loss of sensation in her lower extremities, and good reflexes, with the only notable weakness found at L5 bilaterally[1] (Tr. 93); and a July 2003 examination by neurosurgeon Ronald D. Fundala, M.D. revealed mild ankle weakness, normal reflexes and sensation in her legs, normal coordination, good balance and a negative straight leg raise test (Tr. 196-97). She references as well the results of the nearly nine-years hence examination in February 2012 by consulting examining orthopaedic surgeon Edmund H. Schweitzer, M.D., a portion of which we reprint below:

> I am unable to document an objective orthopaedic pathology on this patient. She demonstrates no radicular signs, negative straight leg raise test bilaterally and full range of motion of the spine. Her MRI in 2003 showed degenerative changes, not indicative of disability.

---

[1]Unable to find a cause for Plaintiff's complaints of pain, Dr. Taylor referred her to a neurologist to rule out "something strange like multiple sclerosis" (Tr. 94).

8

> . . . .
>
> I, therefore, am unable to provide any concrete evidence of disability in this patient. Furthermore, when I told her having her MRI scan would be very helpful, she said she had it at home, walked with a normal gait out of the office, drove home, got it and brought it back. She did not seem to have any trouble doing this. She just doesn't seem disabled to me.

(Tr. 465.) Dr. Schweitzer did note reduced muscle strength on exam, although he remarked that Plaintiff "was not exerting full effort" in this regard (Tr. 465).

The Magistrate Judge additionally concluded that substantial evidence supported the ALJ's decision to reject treating physician Dr. Todd's diagnoses of fibromyalgia and discount his January and May 2005 opinions concerning Plaintiff's functional capacity (Tr. 248-51), the second of which he confirmed in August 2007 (Tr. 285). Consulting physician Cindi Hill, M.D. recommended that Dr. Todd's January 2005 assessment be given no weight because he listed no objective findings in support (Tr. 351-52, citing Tr. 227). A survey of Dr. Todd's treatment notes by the Magistrate Judge reveals "merely a catalog of [P]laintiff's medication treatment" and she remarked that his initial opinion rendered in January 2005 is "equally Spartan inasmuch as it is limited to his finding that [P]laintiff is 'unable to perform any repetitive tasks or any sustained physical activity without exacerbating [her] pain[]'" (Perkins II (doc. 30 at 21 (quoting Tr. 190))).

9

Moreover, Dr. Todd conceded therein that "no objective findings of significance" supported his opinion (Tr. 189). And while his May 2005 RFC assessment was more detailed as to Plaintiff's limitations, he simply reprised his reference to "worsening" or "exacerbation" pain in justification (see Tr. 248-51). The Magistrate Judge observed that the supportability of a treating physician's opinion is properly considered by an ALJ in determining how much weight to afford it, see 20 C.F.R. § 404.1527(c)(3), and here there was none. She commented also, "[t]his is not a case where the ALJ improperly looked for reasons to discount a well-supported treating physician's opinion. As noted by the ALJ, the objective evidence in the record was simply not strong enough to support Dr. Todd's opinions[]" (Perkins II (doc. 30 at 22 n.7 (citing Tr. 352))).

Finally, the Magistrate Judge concluded that substantial evidence supported the ALJ Miller's assessment, in turn permissibly adopted by ALJ Sheard, that Plaintiff is not fully credible. At the first hearing, Plaintiff testified that she elevates her legs during the day (and at night) to alleviate pain (Tr. 302). However, Dr. Todd's RFC questionnaire completed in January 2012 (in anticipation of the second hearing) stated that Plaintiff should <u>not</u> elevate her legs with prolonged sitting (Tr. 462). This inconsistency, combined with her testimony at the second hearing that her condition "ha[d] gotten

10

a little worse" (Tr. 494) since the first hearing was contradicted by Dr. Todd's 2012 opinion that Plaintiff had a greater functional capacity than before (Cf. Tr. 462 with Tr. 248-51). Finally, the Magistrate Judge advises that the record documents a 2005 incident whereby Plaintiff photocopied a prescription written by Dr. Todd for Oxycontin, and presented it at a pharmacy for the purpose of getting it filled a second time. Dr. Todd examined the document and confirmed that it was not the original (Tr. 255). (Perkins II (doc. 30 at 24-25).)

### III. Discussion and Conclusion

Plaintiff has filed a pleading that she styles as her "objections" to the Magistrate Judge's Report and Recommendation. In it, she takes issue, as she did in her Statement of Errors, with the ALJ's finding that her medically determinable impairments of degenerative disc disease and peripheral neuropathy were not severe. She also takes issue, again as she did in her Statement of Errors, with the ALJ's finding that Dr. Todd's diagnosis of fibromyalgia was not a medically determinable impairment, thus forestalling an evaluation of severity.[2]

Defendant Commissioner argues in response that Plaintiff has failed to address the specifics of the Magistrate Judge's

---

[2] Plaintiff appears to have abandoned her contention that it was error for the ALJ to discount her credibility.

11

report. We agree. Plaintiff has cited to a number of on-line sources regarding degenerative disc disease and, randomly, peripheral artery disease, perhaps in the hope that the Court will render a diagnosis and a Step Two finding of severity. Clearly, this is not our role. Plaintiff's reference to Dr. Todd's efforts "to try to find a root cause of Plaintiff's pain" (see Perkins II (doc. 33 at 6-7)) as somehow compliant with the protocol to diagnose fibromyalgia is a gross exaggeration. Moreover, neither the ALJ in the first instance, nor the Magistrate on appeal, has muddled the issue as Plaintiff infers. The ALJ did not deliberate whether, generally, fibromyalgia can be a medically determinable impairment. Obviously, it can. And, once found to be a medically determinable impairment in a particular case, it also—either by itself or in combination with other impairments—can be severe. What the ALJ evaluated, rather, was whether Dr. Todd's diagnosis of fibromyalgia, specifically as to Plaintiff, found support in the record. He determined that it did not, and was, instead, indiscriminate. The Magistrate Judge reports that substantial evidence supports this decision and we concur.

Because Plaintiff has failed to address the specifics of the Magistrate Judge's report, any further analysis of it by this Court would be both cumulative and unwarranted. Having reviewed this matter pursuant to 28 U.S.C. § 636(b)(1) and Fed.

12

R. Civ. P. 72(b), we conclude that the Magistrate Judge's Report and Recommendation (doc. 30) is thorough, well-reasoned and correct, and thus the Court ACCEPTS, ADOPTS and AFFIRMS it in all respects. Accordingly, the decision of the Commissioner to deny Plaintiff's application for disability insurance benefits (DIB), which we find to be supported by substantial evidence, is AFFIRMED. Finally, the Court ORDERS that this case be closed on the docket.

    SO ORDERED.

Dated: May 8, 2014    s/S. Arthur Spiegel_____
                                 S. Arthur Spiegel
                                 United States Senior District Judge